IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VERONICA L. LONG,

    Plaintiff,

v.

COLUMBIA-ARORA JOINT VENTURE,

    Defendant.
_____/

No. C 06-06545 CRB

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff, proceeding pro se, filed this is employment discrimination lawsuit against her former employer, defendant Columbia-Arora Joint Venture. Now pending before the Court is defendant's motion for summary judgment. After carefully considering the papers and evidence filed by the parties, including excerpts from plaintiff's deposition and plaintiff's late filing, the Court concludes that no reasonable trier of fact could find in plaintiff's favor and GRANTS defendant's motion.

**BACKGROUND**

Plaintiff was employed by defendant as a Medical Records Technician at the Petaluma United States Coast Guard clinic from August 2003 until defendant terminated her employment in November 2005. Plaintiff, proceeding without a lawyer, filed this action in October 2006. The Court granted plaintiff's application to proceed *in forma pauperis* and had defendant served with the complaint. Defendant responded to the complaint and

United States District Court
For the Northern District of California

appeared at the initial case management conference on January 26, 2007. Plaintiff, however, did not appear for the conference and did not otherwise communicate with the Court or defendant. Accordingly, the Court ordered plaintiff to show cause why her action should not be dismissed because of her failure to prosecute. Around the same time defendant filed a motion to dismiss the complaint on the ground that it failed to provide any specific allegations as to the alleged employment discrimination. Plaintiff subsequently filed with the Court a binder full of documents and her notes; the binder appeared to express her view of the case. Although plaintiff submitted the binder, she did not appear at the show cause hearing, and she did not make arrangements to appear by telephone.

Because plaintiff was proceeding pro se, and resides in Colorado, the Court declined to dismiss plaintiff's complaint for failing to prosecute; instead, it provided the binder to defendant for its review and denied defendant's motion to dismiss without prejudice. The Court's order declining to dismiss plaintiff's complaint specifically warned plaintiff that if defendant files a new motion to dismiss she must file a written opposition and she must make arrangements to appear at the noticed hearing, either in person or by telephone. The Court also warned plaintiff that her failure to appear at any future court hearings, in person or by telephone, may result in dismissal of her lawsuit for a failure to prosecute.

After reviewing the binder, defendant renewed its motion to dismiss. Although plaintiff did not file an opposition to the motion, and although the motion was well taken, the Court denied the motion to dismiss. The Court believed that the only practical way to accurately discern the basis for this pro se plaintiff's claims was for defendant to take plaintiff's deposition and move for summary judgment. The Court provided plaintiff with a summary judgment warning for pro se plaintiffs and scheduled a further case management conference for October 19, 2007.

Defendant took plaintiff's deposition in September 2007 and at the October 19, 2007 case management conference the Court set a summary judgment briefing schedule. Now pending before the Court is defendant's motion for summary judgment.

Plaintiff did not file a timely opposition to defendant's motion; instead, on the eve of the summary judgment hearing, she submitted a receipt from an office supply store with a handwritten notation. The notation appeared to request a continuance. In any event, plaintiff appeared by telephone at the November 30, 2007 summary judgment hearing. She requested a continuance to December 7, 2007 to file her opposition. The Court granted her request. On December 13, 2007, plaintiff filed her submission. It appears she has not served defendant with a copy of what she has provided the Court.

Despite her receipt of the summary judgment warning for pro se litigants, plaintiff has not submitted a memorandum in opposition; nor has she submitted any declarations, even from herself. Instead, her submission consists of a number of documents with highlights, handwritten notes, and "post its." For example, she submitted handwritten narratives describing telephone calls she has had with various persons along with a long list of persons with telephone numbers. She has also provided the Court with letters of recommendations and an undated newspaper article entitled "Workplace is Fertile Ground for Backstabbers." Her submission includes a highlighted and notated copy of defendant's motion for summary judgment along with a notated and highlighted copy of her deposition transcript, among other documents.

## SUMMARY JUDGMENT STANDARD

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (here, the defendant) has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party

may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## DISCUSSION

Plaintiff's complaint alleges discrimination under the Americans with Disabilities Act ("ADA"), the Age Discrimination and Employment Act ("ADEA"), and Title VII.

//

### A. ADEA

At plaintiff's deposition she testified that she does *not* believe she was terminated because of her age and that she does not have any evidence that suggests defendant terminated her employment because of her age. Accordingly, defendant is entitled to judgment on plaintiff's ADEA claim.

### B. The ADA Claim

Plaintiff appears to allege that defendant terminated her employment in violation of the ADA because she is disabled from Lupus, an autoimmune disorder. On summary judgment, ADA discrimination claims are analyzed under the familiar McDonnell Douglas framework, which requires the plaintiff to carry the initial burden of establishing a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its employment decision. The burden then shifts back to the plaintiff to show that the employer's stated reason is in fact pretext. See id.

To establish a prima facie case of discrimination under the ADA, the plaintiff must prove: (1) that she suffers from a disability within the meaning of the ADA; (2) that she is otherwise qualified, which means that with or without reasonable accommodation she is able

to perform the essential functions of her job; and (3) that she was terminated because of her disability. See Sanders v. Arneson Products, Inc., 91 F.3d 1351, 1353 (9th Cir. 1996).

Defendant first argues that plaintiff cannot carry her prima facie burden because she has not shown that at the time of her termination she was "otherwise qualified." In her deposition she testified that at the time of her termination she was not healthy enough to work; indeed, she testified that she could not have "h[e]ld down a job," and that since the termination of her employment she has not been well enough to go back to work. In her submission in opposition to summary judgment she includes documents for the Social Security Agency which suggest she began receiving social security disability payments in October 2005. Based on this testimony and evidence, defendant's motion for summary judgment on the ADA claim must be granted.

Defendant is entitled to summary judgment on this claim for a second reason: plaintiff cannot show that defendant terminated her employment because of her alleged disability. In support of its summary judgment motion defendant has produced evidence of a legitimate, nondiscriminatory reason for plaintiff's firing, namely, her continued and repeated violation of the company's dress code and inappropriate behavior and related complaints from co-workers and clients. Based on this evidence, no rational trier of fact could find that defendant terminated plaintiff's employment because of her alleged disability. The Court has reviewed the documents submitted by plaintiff and none include admissible evidence that create a genuine dispute as to the reason for the termination of plaintiff's employment. Defendant is entitled to summary judgment on this claim.

**C.     The Title VII Sex Discrimination Claim**

Plaintiff also appears to contend that she was the victim of a hostile work environment. Her claim is based on incidents involving her direct day-to-day supervisor Chief Warrant Officer Edward Chacon (a Coast Guard employee, not an employee of defendant) and Coast Guard Secretary Lorraine Shipley, who did not supervise plaintiff.

In her deposition plaintiff explained that the basis for her claim involving Shipley is that Shipley once took a photograph of plaintiff and was always "checking her out." Shipley

5

also told plaintiff that plaintiff dressed inappropriately for work. The basis for plaintiff's claim involving Chacon, according to plaintiff's deposition testimony, is that Chacon once sent an inappropriate joke to plaintiff by email and once left her a note that stated: "By the way, nice outfit today. Love the pinstripes. Looks sharp." Plaintiff's submission includes a copy of Chacon's email as well as plaintiff's written complaint to Chacon about Shipley having taken plaintiff's photograph.

"A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." Brooks, 229 F.3d at 923. "The working environment must both subjectively and objectively be perceived as abusive." Id. (internal quotation marks and citation omitted). Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics and hostility must be measured based on the totality of the circumstances. Id. "These [circumstances] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

Plaintiff's allegations, even if true, do not amount to a hostile work environment as a matter of law. First, there is nothing discriminatory about her allegations as to Shipley. Plaintiff's attorney wrote a letter to Shipley complaining about Shipley's behavior that never refers to Shipley's conduct as sexual harassment; to the contrary, the letter accuses Shipley of attempting to destroy plaintiff's reputation. And plaintiff admitted that she approved the letter before it was mailed. Second, the incidents themselves are, at most, a mere offensive utterance and do not rise to the level of sexual harassment. The Court is aware of no case that would support plaintiff's claim here. Accordingly, defendant is entitled to summary judgment on the hostile work environment claim.

To the extent plaintiff also intended to make a gender discrimination Title VII claim, she admitted at her deposition that she has no basis for doing so. Summary judgment on the Title VII claim must be granted.

**D.  The Retaliation Claims**

Finally, plaintiff also appears to make retaliation claims under the ADA, ADEA and Title VII. To prevail on her retaliation claims plaintiff must prove, among other things, that she engaged in protected activity for which defendant retaliated against her. See, e.g., Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 965 (9th Cir. 2004). At her deposition plaintiff was unable to identify any protected activity which could have led to the termination of her employment. The only arguably protected activity she identified was her complaint filed with the Equal Employment Opportunity Commission; that complaint, however, was filed *after* defendant terminated plaintiff's employment.

Even if plaintiff had identified some protected activity, however, as explained above defendant has produced undisputed evidence of a nondiscriminatory reason for plaintiff's firing; accordingly, defendant's motion for summary judgment on the retaliation claims must be granted.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment on all of plaintiff's claims is GRANTED.

**IT IS SO ORDERED.**

Dated: December 28, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2006\6545\summaryjudgmentorder.wpd